OPINION
{¶ 1} Defendant-appellant, David S. Salyer, appeals his conviction in the Warren County Court of Common Pleas for aggravated robbery and a firearm specification.
 {¶ 2} Appellant was a friend of Greg Orona. Through appellant, Orona met Gary Sims. When Orona started his own heating and air conditioning business, Sims came to work for him as a laborer.
 {¶ 3} Sometime thereafter, Orona became indebted to Sims for approximately $260 *Page 2 
for work Sims had performed for him and an additional $63 for a loan that Sims had made to him. Orona told Sims that he would pay him on a particular Friday since he had expected to receive a check from a company for whom Orona had performed work. However, the check was held back, and Orona was unable to pay Sims any of the money he owed him.
 {¶ 4} On November 22, 2005, Orona left his apartment and got into the passenger seat of a truck being driven by his cousin, Kenneth Alan Leach. At that moment, appellant pulled up behind the truck, thereby preventing Orona and Leach from leaving. Sims was a passenger in appellant's vehicle.
 {¶ 5} Before appellant brought the vehicle to a complete stop, Sims got out and ran up to the truck's passenger side, pulling a handgun out of his coat pocket. Sims tapped on the passenger side window with the handgun and yelled at Orona "to open the fucking door." Orona told Sims to put the gun away and to calm down. Sims did put the gun away momentarily; however, when Orona opened the door, Sims pulled the gun out again and used it to strike Orona on the back of the head. Sims then reached into Orona's shirt pocket and took $120. After Orona promised Sims he would pay him the money he owed him, Sims got back into appellant's vehicle and appellant drove away. Leach then telephoned the police.
 {¶ 6} Several Middletown police officers, including Officer Kathy Jones, responded to the call. Following Officer Jones' direction, Orona called Sims and told him that he had the money he owed him and that Sims should come back to Orona's apartment to pick it up. At first, Sims stated "All right, I will." But then Sims said, "No. Hold up, hold up. I ain't stupid. I'm going to send Dave [i.e., appellant] there to get it for me."
 {¶ 7} Appellant drove to an empty church parking lot that was several blocks up the street from Orona's apartment complex and parked his vehicle. He then walked through a wooded area between the church and the apartment complex, constantly checking over his *Page 3 
shoulder and scanning the area. As appellant neared the apartment complex, Orona identified him as one of the men who had been involved in the robbery. At that time, the police officers who had been following appellant arrested him.
 {¶ 8} On December 27, 2005, appellant was indicted on one count of aggravated robbery and one count of felonious assault. Both charges were accompanied by a firearm specification. In a bill of particulars, the state alleged that appellant had aided and abetted Sims in the commission of an aggravated robbery by driving Sims to Orona's apartment, by staying there while Sims "pistol whipped" and robbed Orona, and then by driving Sims away from the scene of the crime.
 {¶ 9} After appellant waived his right to a jury trial, appellant was tried to the bench on March 23, 2006. To prove its case, appellee presented the testimony of Orona, Officer Young, and two other police officers involved in the case, who testified to the facts related above. Appellant chose not to present any evidence on his behalf. At the close of evidence, the trial court found appellant not guilty on the felonious assault charge, but guilty of the aggravated robbery charge and the accompanying firearm specification.
 {¶ 10} The trial court ordered appellant to serve a mandatory three-year prison term on the firearm specification and further ordered appellant to serve that term prior to, and consecutively with, a three-year prison term on the aggravated robbery charge. The trial court also informed appellant that upon completion of his prison sentence, he would be placed on a five-yeard period of post-release control.[1]
 {¶ 11} Appellant now appeals his conviction, raising two assignments of error: *Page 4 
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND/OR THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} Appellant argues that his convictions for aggravated robbery and the accompanying firearm specification were against the sufficiency and manifest weight of the evidence. We disagree with this argument.
 {¶ 15} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"State v. McKnight, 107 Ohio St.3d 101, 112, 2005-Ohio-6046, ¶ 70, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In evaluating the sufficiency of the evidence, a reviewing court is obligated to view the evidence in a light most favorable to the prosecution, McKnight, and is not permitted to substitute its judgment for that of the jury or other trier-of-fact regarding the credibility of the witnesses. See State v. Benge, 75 Ohio St.3d 136, 143,1996-Ohio-227.
 {¶ 16} A court considering whether a conviction is against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52; State v.Blanton, Madison App. No. CA 2005-04-016, 2006-Ohio-1785, ¶ 7.
 {¶ 17} Appellant was convicted of complicity to aggravated robbery in violation of R.C. 2911.01(A)(1) and an accompanying firearm specification in violation of R.C. 2941.145(A). *Page 5 
R.C. 2911.01 states in pertinent part:
 {¶ 18} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code,[2] or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 19} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 20} The culpability required for the "theft offense" element of aggravated robbery is "knowingly." State v. McSwain (1992),79 Ohio App.3d 600, 606; State v. Bumphus (1976), 53 Ohio App.3d 2d 171, 173. R.C. 2901.22(B) states, in pertinent part, that "[a] person acts knowingly, regardless of his purpose,[3] when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 21} The complicity statute in R.C. 2923.03 states in pertinent part:
 {¶ 22} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 23} "* * * *Page 6 
 {¶ 24} "(2) Aid or abet another in committing the offense[.]"
 {¶ 25} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v.Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus.
 {¶ 26} Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Lett, 160 Ohio App.3d 46, 52,2005-Ohio-1308. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. Id.
 {¶ 27} However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." State v. Widner (1982), 69 Ohio St.2d 267, 269. "[T]here must be some level of active participation by way of providing assistance or encouragement." State v. Nievas (1997),121 Ohio App.3d 451, 456. "`Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.'" Id., citing State v. Sims (1983),10 Ohio App.3d 56, 59.
 {¶ 28} A charge of complicity may be stated either in terms of the complicity statute or in terms of the principal offense. R.C.2923.03(F). Additionally, it is no defense to a complicity charge that no person with whom the accused was in complicity has been convicted as a principal offender. See R.C. 2923.03(B).
 {¶ 29} R.C. 2941.145(A) requires that a mandatory three-year prison term be imposed upon an offender who "had a firearm on or about the offender's person or under the *Page 7 
offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Id.
 {¶ 30} A defendant may be convicted of an offense, which includes a firearm specification, where his co-defendant or uncharged accomplice utilized a firearm in the commission of the offense and the defendant, himself, is found to have acted as an accomplice. See State v.Brown, Licking App. No. 2005CA00006, 2005-Ohio-3824.
 {¶ 31} In this case, the state presented sufficient evidence to convict appellant of complicity to aggravated robbery and the accompanying firearm specification. The evidence showed that appellant drove Sims around on the day of the offense. First, appellant drove Sims by a job site were Orona was working. Shortly thereafter, appellant drove Sims to Orona's apartment and parked directly behind the truck in which Orona was sitting, thereby preventing Orona from leaving. Sims left appellant's car, pistol-whipped Orona, took $120 from Orona's shirt pocket, and did not leave until Orona promised to pay him the money he owed him. Appellant then drove Sims away from the crime scene.
 {¶ 32} The evidence was sufficient to demonstrate that appellant had far more than a mere association with Sims, and that appellant did not merely approve or acquiesce in Sims' actions. Instead, the evidence shows that appellant actively participated and contributed to Sims' unlawful acts against Orona. See Nievas, 121 Ohio App.3d at 456.
 {¶ 33} This evidence was sufficient to permit the trial court, in its role as trier-of-fact, to conclude that appellant knowingly aided and abetted Sims by supporting, assisting, encouraging, cooperating with, advising, or inciting him in the commission of the aggravated robbery, and that appellant shared the same criminal intent as Sims, in taking part in the commission of the offense. See Johnson, 2001-Ohio-1336 at syllabus.
 {¶ 34} The testimony at trial shows that appellant was in a position to watch these *Page 8 
events unfold and that he took an active part in them. Not only did appellant bring Sims to the crime scene and then drive him away once the crime had been committed, appellant also agreed to return to Orona's apartment and retrieve the remainder of the money that Orona supposedly still owed Sims. On his way to Orona's apartment, appellant was seen constantly checking over his shoulder and scanning the area.
 {¶ 35} Furthermore, because the evidence showed that appellant was Sims' accomplice, there was sufficient evidence presented to support appellant's conviction on the firearm specification, even though Sims was the one who actually possessed the firearm. See Brown,2005-Ohio-3824.
 {¶ 36} Appellant argues that it was never established that he knew Sims was armed or that he intended to assault or rob Orona. He further argues that it is just as reasonable to assume that he was bringing Sims over to Orona's apartment "to peacefully confront" Orona over the money he owed him, as it is to assume that he knew what Sims had in mind. We find this argument unpersuasive.
 {¶ 37} When appellant and Sims drove to Orona's apartment, appellant parked right behind the truck Orona and Leach were in, thereby preventing Orona from leaving. Such conduct does not suggest that Sims and appellant were looking for a peaceful confrontation. Appellant contends that it was reasonable to infer from the evidence that he parked immediately behind the truck Orona was in, merely to give Sims the opportunity to find out when he would be repaid by Orona, and that he did not know that Sims would act as he did.
 {¶ 38} However, this fails to explain why appellant agreed to return to Orona's apartment to pick up the money Orona allegedly owed Sims after appellant had seen Sims' violent acts toward Orona. Appellant's willingness to return to Orona's apartment on Sims' behalf provides additional, strong evidence that he was acting in complicity with Sims.
 {¶ 39} Appellant also argues that because the truck Orona was in had a camper shell *Page 9 
on it, the evidence fails to show that appellant could have actually seen all of the altercation that took place between Sims and Orona, or that he [appellant] even knew that Sims had taken money from Orona. However, the testimony at appellant's trial showed that the altercation took place right in front of appellant. As a result, it was reasonable for the trial court, acting as the trier-of-fact in this case, to find that appellant was aware of the altercation between Sims and Orona, and that Sims had taken money from Orona.
 {¶ 40} Appellant also contends that a question exists as to whether he prompted Leach's call to the police since Orona testified that he (i.e., Orona himself) did not intend to call the police, and that by returning to Orona's apartment, he might have been merely trying to prevent further trouble by acting as an intermediary between Orona and Sims. We find these arguments unpersuasive.
 {¶ 41} The contention that Leach may have called the police at appellant's suggestion is mere speculation, which is unsupported by any evidence in the record. Furthermore, appellant's argument that by returning to Orona's apartment, the court could infer that he was simply trying to act as an intermediary between Orona and Sims, fails to explain why appellant felt the need to constantly look over his shoulder and scan the area when he went there. Appellant's behavior clearly suggests a guilty purpose on his part.
 {¶ 42} In light of the foregoing, appellant's convictions on the charge of complicity to aggravated robbery and the accompanying firearm specification were supported by sufficient evidence and were not against the manifest weight of the evidence.
 {¶ 43} Appellant's first assignment of error is overruled.
 {¶ 44} Assignment of Error No. 2:
 {¶ 45} "THE TRIAL COURT ERRED IN IMPOSING APPELLANT'S SENTENCE WITH RESPECT TO POST-RELEASE CONTROL."
 {¶ 46} Appellant asserts that the trial court's decision to impose a period of post-release *Page 10 
control on him violates Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, because it allows the parole board to return him to prison for up to one-half of his original sentence "without the benefit of a jury's finding, beyond a reasonable doubt, that he committed the offenses contributing to the imposition of that additional sentence." We disagree with this argument.
 {¶ 47} Initially, appellant failed to raise this argument at trial. Because of this failure, appellant has waived all but plain error. SeeState v. Johnson, 112 Ohio St.3d 210, 214, 2006-Ohio-6404. Plain error is "obvious" error and exists only where it can be said that but for the error, the outcome of the proceedings clearly would have been different. Id.
 {¶ 48} In this case, the record fails to show the existence of plain error. The trial court did not impose post-release control as a result of making judicial findings of fact as in Apprendi or Blakely. Instead, the trial court was statutorily obligated to impose a five-year period of post-release control on appellant, as a result of his conviction on a first-degree felony. See R.C. 2967.28(B)(1).
 {¶ 49} Appellant's second assignment of error is overruled.
 {¶ 50} Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] The trial court imposed the minimum sentence allowed by law on appellant. The trial court was required to impose a three-year sentence on appellant for his conviction on the firearm specification, see R.C.2941.145(A); was required to impose at least a three-year sentence on appellant for his conviction on the aggravated robbery charge, see R.C.2911.01(C); was required to order appellant to serve his sentence for the firearm specification prior to, and consecutively with, his sentence for aggravated robbery, R.C. 2929.14(E)(1)(a); and was required to impose a five-year period of post-release control on appellant, as a result of his conviction on a first degree felony, see R.C.2967.28(B)(1).
[2] {¶ a} R.C. 2913.01 states in pertinent part:
{¶ b} "(K) `Theft offense' means any of the following:
{¶ c} "(1) A violation of section 2911.01, 2911.02, 2911.11, 2911.12,2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04, 2913.041, 2913.05,2913.06, 2913.11, 2913.21, 2913.31, 2913.32, 2913.33, 2913.34, 2913.40,2913.42, 2913.43, 2913.44, 2913.45, 2913.47, former section 2913.47 or2913.48, or section 2913.51, 2915.05, or 2921.41 of the Revised Code;
{¶ d} "(2) A violation of an existing or former municipal ordinance or law of this or any other state, or of the United States, substantially equivalent to any section listed in division (K)(1) of this section or a violation of section 2913.41, 2913.81, or 2915.06 of the Revised Code as it existed prior to July 1, 1996;
{¶ e} "(3) An offense under an existing or former municipal ordinance or law of this or any other state, or of the United States, involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, forgery, counterfeiting, deceit, or fraud;
{¶ f} "(4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (K)(1), (2), or (3) of this section."
[3] R.C. 2901.22(A) states that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." (Emphasis added.) *Page 1