[Cite as *State v. Sparks*, 2014-Ohio-4277.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-09-168 |
| | : | O P I N I O N |
| - vs - | | 9/29/2014 |
| | : | |
| DRAVAUGHN P. SPARKS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-05-9721

Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 304 North Second Street, Hamilton, Ohio 45011, for defendant-appellant

**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Dravaughn P. Sparks, appeals from his convictions in the Butler County Court of Common Pleas for aggravated robbery and kidnapping.

{¶ 2} On June 5, 2013, Sparks was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), and one count of kidnapping in violation of R.C. 2905.01(A)(2), both felonies of the first degree.  A gun specification accompanied both

charges. The state alleged that Sparks acted either as the principal or in complicity with Kameron Williams in the commission of those crimes. Sparks pled not guilty to the charges, and the case proceeded to trial.

{¶ 3} Following a three-day trial, the jury found Sparks guilty on both counts and the added gun specification. The trial court merged the aggravated robbery and kidnapping charges and sentenced Sparks to four years in prison. Sparks was additionally ordered to serve a mandatory three-year prison term on the gun specification, prior to and consecutive with the aggravated robbery sentence.

{¶ 4} Sparks appeals those convictions, raising two assignments of error for our review. For ease of discussion, we will discuss both assignments of error together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. SPARKS OF AGGRAVATED ROBBERY IN VIOLATION OF R.C. 2911.01(A)(1) AND KIDNAPPING IN VIOLATION OF R.C. 2905.01(A)(2).

{¶ 7} Assignment of Error No. 2:

{¶ 8} MR. SPARKS' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} Sparks argues that (1) the trial court erred in denying his Rule 29 motion for acquittal on the aggravated robbery and kidnapping charges, and (2) his conviction was against the manifest weight of the evidence because "the trier of fact did not properly execute its fact-finding responsibilities and failed to render an appropriate verdict in light of the evidence presented at trial."

{¶ 10} Crim.R. 29(C) permits a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 9 (12th Dist.). "This court reviews a trial court's decision on a Crim.R. 29(C) motion for

acquittal using the same standard as that used to review a sufficiency-of-the-evidence claim." *Id.*; *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 17; *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 26. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 11} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of

acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 12} The present case involved allegations of kidnapping and robbery at gunpoint. Aggravated robbery under R.C. 2911.01(A)(1), provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Kidnapping under R.C. 2905.01(A)(2) provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter."

{¶ 13} Ohio's complicity statute, R.C. 2923.03(A)(2), states in pertinent part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." In order to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus. Such intent may be inferred from the circumstances surrounding the crime, including presence, companionship, and conduct before and after the offense is committed. *Id.*; *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 20. Moreover, evidence of aiding and abetting may be shown by either direct or circumstantial evidence. *State v. Salyer*, 12th Dist. Warren No. CA2006-03-039, 2007-Ohio-1659, ¶ 26.

{¶ 14} On the day in question, Sparks, Williams, Caitlyn Riddle, Anthony Wince and Sparks' sister made a trip to Oxford, Ohio. There, Williams came into contact with Andrew Livingstone, a Miami University student. Williams and Livingstone had not previously met. Williams asked Livingstone if he wanted to purchase marijuana and Livingstone agreed. Livingstone then informed Williams that he was on his way to meet a friend, Rob Dvorak.

{¶ 15} After the two met up with Dvorak, they worked out the details of the marijuana sale. Williams told them to give him the money and he would retrieve the marijuana from his car. Dvorak declined, not trusting that Williams wouldn't simply take the money and leave. Williams then agreed to have Dvorak get into the car with him to complete the transaction.

{¶ 16} Upon arrival at the car, there were four others seated inside. Riddle was in the driver's seat and Sparks was in the front passenger seat. Dvorak got into the back seat where two others were seated, and Williams followed him in. Livingstone testified that he approached the car to look in, at which time Sparks said something to the effect of, "[w]hat the hell are you doing? Get the fuck out of here." Livingstone then turned and walked away.

{¶ 17} Dvorak testified that Sparks almost immediately began yelling at him once inside the car. Dvorak then gave Williams his money and asked to be let out of the car. At that point the car started to move, and Dvorak realized he wasn't going to be let out. Dvorak testified that Sparks then pulled a gun out from between his legs, began yelling, waving it in the air and pointing it at him. Dvorak pleaded for them to go to an ATM so that he could withdraw more cash and they would "just call it a day." According to Dvorak, Sparks had been directing the driver and told her to pull up to a Chase ATM on Main Street.

{¶ 18} Once at the ATM, Dvorak testified that Sparks handed the gun to Williams, who then escorted Dvorak towards the ATM with the gun pressed against his back. Dvorak attempted to buy some time at the ATM by entering incorrect PIN numbers, but eventually Williams became agitated. At that point, a male in the vehicle yelled "let's go." Dvorak

withdrew $100 and handed it to Williams. Williams demanded that he withdraw more. Officers arrived on the scene at that time.

{¶ 19} Livingstone corroborated Dvorak's testimony. He testified that he saw the vehicle turn onto Main Street and assumed that the transaction had gone off as planned. However, he suspected something was wrong when he saw Williams exit the vehicle "attached right to" Dvorak. Once Livingstone saw them approach the ATM, he concluded there was a problem and called 9-1-1. He then approached police officers and advised them of his concerns. Those police officers blocked the vehicle and secured the passengers and Williams.

{¶ 20} The officers discovered a loaded .25 caliber pistol "sticking out the bottom of [Williams'] pant leg." Cash in the amount of $165 was also found on Williams, the exact amount Dvorak alleged to have given him. The officers found a small bag of marijuana and a knife on Sparks. They also recovered a small amount of cash, marijuana and five rounds of .25 caliber ammunition in the vehicle and on the other passengers.

{¶ 21} Riddle testified on behalf of the defense. She had been driving the vehicle on the night in question. She testified that Williams told her Dvorak just needed a ride home. According to Riddle, Sparks did not direct her on where to go at any time. She stated that Sparks told Dvorak to "get off his sister," but only in a raised tone, rather than a yell. Riddle testified that it was Williams who began to yell at Dvorak. She further testified that she only ever saw Williams with the gun, never Sparks. Finally, she testified that Sparks never told her where to go, nor did he tell Dvorak what to do, demand money from him, or take money from him.

{¶ 22} Weighing the evidence above, we cannot find that the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding Sparks guilty of aggravated robbery and kidnapping. Evidence was presented to show that Sparks was not only present

at the scene of the crime, but actively participated. Dvorak testified that Sparks directed Riddle to drive to the ATM, pulled out and pointed a gun at Dvorak and handed that gun to Williams so that he could escort Dvorak to the ATM to withdraw more money. Dvorak's testimony makes clear that Sparks and Williams shared the same intent to commit the robbery. Dvorak also testified that he asked to be let out of the car, but that the car began to leave. He stated that Sparks directed the driver where to go and pulled out the gun which he pointed at Dvorak. According to Dvorak, Sparks handed the gun to Williams to continue the robbery at the ATM while restraining Dvorak's liberty. Therefore, pursuant to Dvorak's testimony, it is again clear that Sparks and Williams shared the same intent in kidnapping Dvorak during the commission of the robbery.

{¶ 23} While the defense presented testimony from Riddle that conflicts with Dvorak's testimony, we agree with the state that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Coleman*, 12th Dist. Butler No. CA2010-12-329, 2011-Ohio-4564, ¶ 26. "As the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13. The trier of fact in the present case found the prosecution testimony to be more credible. We agree.

{¶ 24} In light of the foregoing, having found that Sparks' conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, Sparks' assignments of error are overruled.

{¶ 25} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.