[Cite as *State v. Gillespie*, 2021-Ohio-3650.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-01-004 |
| | : | O P I N I O N |
| - vs - | | 10/12/2021 |
| | : | |
| LAURA GILLESPIE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR36595


David P. Fornshell, Warren County Prosecuting Attorney, and Kathyrn M. Horvath, Assistant Prosecuting Attorney, for appellee.

Anzelmo Law, and James A. Anzelmo, for appellant.



**PIPER, P.J.**

{¶1}   Appellant, Laura Gillespie, appeals her convictions in the Warren County Court of Common Pleas for aggravated robbery and felonious assault, along with accompanying firearm specifications.

{¶2}   Michael Roberts and Gillespie were in a relationship, and the two were codefendants in a joint trial in which both were convicted.  Roberts appealed his convictions,

and this court affirmed. *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073. We reiterate the facts as stated in *Roberts*, as they are the same for the case sub judice.

{¶3} Roberts' mother, Donna Black, had been in a relationship with the victim of the crimes for which Roberts and Gillespie were convicted. However, Black and the victim had ended their relationship and the victim had procured a protection order against Black. On an evening in March 2020, Gillespie exchanged text messages with the victim indicating that Roberts was in jail and that she needed $2,000 to post bond for him. The victim responded to the text messages and invited Gillespie to his home. Despite Gillespie's representation that Roberts was incarcerated and despite the protective order against Black, Roberts and Black accompanied Gillespie to the victim's home.

{¶4} The victim was working on his garbage disposal when he noticed Roberts standing over him. When the victim removed his head from underneath the sink area, Roberts hit him between the eyes with the butt of a revolver, which the victim observed as having been spray painted a reddish color. Roberts continued to hit the victim in the head with the firearm and demanded money. The victim then heard Gillespie encourage Roberts to shoot the victim once they had obtained his money.

{¶5} The victim and Roberts struggled with each other, during which Gillespie obtained control of the firearm and Roberts urged her to use it. At that time, Gillespie pointed the revolver at the victim's head and neck, and the victim released Roberts. Roberts then took the revolver from Gillespie and used it to strike the victim multiple times. Eventually, all four people went upstairs.

{¶6} Roberts, Gillespie, and Black forced the victim to go across the hallway into a spare bedroom that the victim used as a recording studio. Roberts instructed the victim to sit down and then struck him multiples times with the revolver. Gillespie then took the

firearm, emptied bullets into her purse, and placed the revolver in her purse. Roberts, Gillespie, and Black then left the victim's home.

{¶7} The victim then tended to his injuries and cleaned himself. Sometime later, the victim called the police. A sergeant with the Hamilton Township Police Department responded to the victim's home and immediately recognized that the victim had been badly injured. The victim told the sergeant that he had been assaulted by Roberts and Gillespie.

{¶8} Gillespie was indicted for aggravated robbery, felonious assault, and the accompanying firearm specifications, for acting in complicity with Roberts. After the indictment was issued, Gillespie made a report to the Highland Heights, Kentucky Police Department that her firearm had been stolen. She reported that the firearm was a pinkish red color and called it a "Pink Lady." The police later determined that Gillespie had made a false report.

{¶9} Roberts and Gillespie pled not guilty to the charges, and the state moved to try the defendants together. Gillespie moved to separate the trial but later agreed to a joint jury trial with Roberts as her codefendant. During trial, Black, who had since pled guilty to aggravated robbery for the same incident, testified and essentially corroborated the facts as discussed above, with some inconsistencies. The jury found Roberts and Gillespie guilty on all counts and specifications.

{¶10} The trial court sentenced Gillespie to three years on the aggravated robbery charge and three years for the accompanying firearm specification. The court ordered Gillespie to serve two years on the felonious assault charge and three years for its accompanying firearm specification. While the trial court ordered Gillespie to serve concurrent prison terms for the underlying offenses, it ordered her to serve the firearm specifications consecutively for an aggregate prison term of nine years. Gillespie now appeals her convictions and sentence, raising the following assignments of error. Because

Gillespie's first three assignments of error are interrelated, we will address them together.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT COULD CONSIDER WHETHER GILLESPIE WAS COMPLICIT WITH ROBERTS IN COMMITTING AGGRAVATED ROBBERY AND FELONIOUS ASSAULT, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶13} Assignment of Error No. 2:

{¶14} LAURA GILLESPIE'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶15} Assignment of Error No. 3:

{¶16} LAURA GILLESPIE'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶17} In her first, second, and third assignments of error, Gillespie argues that her convictions are against the manifest weight of the evidence and not supported by sufficient evidence to prove her complicity in committing felonious assault and aggravated robbery, and that the trial court erred in instructing the jury on complicity.

{¶18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines

the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 14. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶19} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶20} While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide." *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the

issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶21} Gillespie was first charged with aggravated robbery in violation of R.C. 2911.01(A)(1), which provides in part that no person while committing a theft offense shall "have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *."

{¶22} Gillespie was also charged with felonious assault in violation of R.C. 2903.11(A)(2), which prohibits one from knowingly causing "physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."[1]   A "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."  2901.22(B).

{¶23} As noted above, Gillespie was charged with being complicit in Roberts' crimes.  According to R.C. 2923.03(A),

> (A)  No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (1)  Solicit or procure another to commit the offense;
>
> (2)  Aid or abet another in committing the offense;
>
> (3)  Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
>
> (4)  Cause an innocent or irresponsible person to commit the offense.

R.C. 2923.03(F) further provides that "whoever violates this section is guilty of complicity in

---

1.  The record clearly demonstrates that the victim suffered serious physical harm as a result of being beaten with the revolver including a fractured orbital floor, a displaced fracture of the nose, closed fracture of the left maxilla, as well as a closed head injury.

the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

{¶24} To support a conviction for complicity by aiding and abetting "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus.

{¶25} Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Salyer*, 12th Dist. Warren No. CA2006-03-039, 2007-Ohio-1659, ¶ 26. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *Id.*

{¶26} However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269 (1982). Instead, there must be some level of active participation by way of providing assistance or encouragement. *Salyer* at ¶ 27. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act. *Id.* (appellant actively participated and contributed to the principal's unlawful acts by driving the principal around on the day the principal committed aggravated robbery).

{¶27} A jury instruction on complicity is proper if the evidence presented at trial could reasonably be found to support a defendant's guilt pursuant to R.C. 2923.03. *State v. Benson,* 12th Dist. Butler No. CA2004-10-254, 2005-Ohio-6549, ¶ 29. "In reviewing the

record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 35.

{¶28} After reviewing the record, we find that the state presented sufficient evidence that Gillespie was complicit in committing aggravated robbery and felonious assault and that such convictions were not against the manifest weight of the evidence. We also find that the trial court properly instructed the jury on complicity because the record contains evidence from which reasonable minds might reach the conclusion that Gillespie was complicit in the criminal activity.

{¶29} The victim testified that Gillespie sent him text messages indicating that Roberts was incarcerated and that she needed funds to secure his release. In facilitating the robbery and felonious assault, Gillespie concocted an urgent need for financial assistance which led the victim to invite Gillespie to his home. The fact that Gillespie procured the victim's invitation then drove to the victim's home with Roberts and Black in her vehicle indicates her obvious knowledge that Roberts was not, in fact, incarcerated and that she did not need money for Roberts' release. Moreover, Gillespie took her "Pink Lady" revolver with her to the victim's home and used it multiple times, assisting in the assault and robbery.

{¶30} The victim testified that Roberts, Gillespie, and Black came into his home and that Roberts hit him multiple times with the butt of a revolver and that Gillespie aided Roberts multiple times in multiple ways during the incident thus demonstrating her participation in the criminal activity that night.

{¶31} Specifically, the victim testified that Gillespie pointed the firearm at him multiple times during the commission of the offenses and at one point encouraged Roberts

to shoot the victim once they had stolen his money. When the victim tried to fight off Roberts, Gillespie pointed her firearm against the victim's head and neck thereby securing the victim's cooperation by her threat to use the firearm. Once Gillespie, Black, and Roberts had forced the victim upstairs and into his recording studio, Gillespie took control of her firearm. In preparing to leave the victim's home, Gillespie confirmed her familiarity with the firearm by removing the bullets, placing the weapon into her purse, and telling the victim that the bullets would "F you up."

{¶32} While Gillespie argues that her actions were passive and that she merely associated with Roberts on the night in question, we disagree. Gillespie relies upon two cases on appeal. First, she cites an Eighth District Court of Appeals case wherein the appellant's argument was sustained that the state failed to prove he was complicit in trafficking cocaine and heroin. *State v. Hall*, 8th Dist. Cuyahoga No. 102789, 2016-Ohio-698, ¶ 10.

{¶33} In *Hall*, the defendant was acquainted with a drug dealer who was under investigation for drug activity. Hall went to the dealer's home and approximately 20 minutes later, police executed a search warrant on the home. Police located heroin, cocaine, and marijuana therein, as well as marijuana in Hall's vehicle. Hall was convicted of trafficking in the three drugs and the state proceeded on the theory that Hall was complicit in the trafficking of heroin and cocaine found in the dealer's home.

{¶34} However, the Eighth District reversed, finding that the state failed to present evidence that Hall aided or abetted the dealer because there was no evidence presented that Hall frequented the dealer's home, the involved confidential informant never provided information that Hall was involved in the dealer's enterprise, and law enforcement's surveillance only indicated Hall's presence at the home for approximately 20 minutes before the police executed the search warrant.

{¶35} The *Hall* court determined that the only evidence connecting Hall to the home was his social acquaintance with the dealer and presence at the time of the search. The court reasoned that "such friendship does not establish the requisite intent to aid and abet in a crime just through mere presence and companionship. Merely associating with drug dealers and being present in the house at the time of their arrest is insufficient to sustain a complicity in drug trafficking charge." *Id.* at ¶ 12.

{¶36} Similarly, the Eighth District reversed a conviction for receiving stolen property and possession of criminal tools because the state failed to provide sufficient evidence that the individual aided or abetted the principal in stealing a vehicle and using a screwdriver to change the license plate to hide the theft. *State v. Sims*, 10 Ohio App.3d 56, 56 (8th Dist.1983). In *Sims*, the appellant asked for ride home from a bar and entered a vehicle that, unbeknownst to him, had been stolen. Less than one minute after entering the vehicle, a police officer pulled the vehicle over to investigate its theft. Sims was later convicted of complicity in receiving stolen property and possession of criminal tools. However, the Eighth District reversed Sims' convictions, finding that,

> there was no evidence that appellant assisted or encouraged Sanders, the driver of the stolen automobile, in his retention of the automobile, license plate, or screwdriver, or that he had a legal duty to object. The only evidence adduced indicated that appellant was "associated" with Sanders, in that he was a passenger in the car with Sanders for about thirty seconds when he and his women companions were ordered out of the car by police.

*Id.* at 59.

{¶37} While we do not disagree with Gillespie that mere association with the principal is not enough to convict a defendant of complicity, the facts of *Hall* and *Sims* are readily distinguishable from Gillespie's own circumstances. Gillespie's actions demonstrate that she acted specifically and knowingly to support, assist, and encourage Roberts' crimes

above and beyond her mere presence at the victim's home or her association with Roberts.

{¶38}   Unlike Hall who only associated with the dealer or Sims who was only present in the stolen car, Gillespie actively contributed to Roberts' criminal activity when she threatened the victim multiple times with her firearm, thus allowing Roberts to beat the victim and eventually steal his money.   Moreover, Gillespie shared Roberts' criminal intent by texting the victim to set up a meeting, taking her vehicle and firearm, going to the victim's home, and then suggesting that they shoot the victim after taking his money.   Thus, the cases relied upon by Gillespie are not persuasive because they are factually distinguishable from the case sub judice.

{¶39}   After reviewing the record, we find that there was sufficient evidence to prove that Gillespie was complicit in committing aggravated robbery and felonious assault, and that such convictions were not against the manifest weight of the evidence.   Nor were the jury instructions on these matters erroneous.   As such, Gillespie's first three assignments of error are overruled.

{¶40}   Assignment of Error No. 4:

{¶41}   THE TRIAL COURT ERRED BY FAILING TO MERGE GILLESPIE'S OFFENSES.

{¶42}   Gillespie argues in her fourth assignment of error that the trial court erred in failing to merge her convictions.   However, Gillespie failed to argue this issue in front of the trial court, and has thus waived all but plain error on appeal.

{¶43}   Pursuant to R.C. 2941.25, the imposition of multiple punishments for the same criminal conduct is prohibited.  *State v. Conrad*, 12th Dist. Butler No. CA2018-01-016, 2018-Ohio-5291, ¶ 43.  However, the "failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest

miscarriage of justice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3.

{¶44} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three separate factors — the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge, and a defendant may be convicted and sentenced for multiple offenses if *any* of the following are true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus and ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶45} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.* The burden is on the defendant to establish his or her entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Slamka*, 12th Dist. Butler No. CA2018-10-200, 2019-Ohio-3317, ¶ 27-29.

{¶46} After reviewing the record, we find that Gillespie's convictions are not allied offenses. Instead, the facts are clear that Gillespie committed the acts with a separate animus and with separate import in that the harm caused by the crimes were separate and identifiable. The state presented evidence that the assault commenced the moment Roberts began to beat the victim with Gillespie's revolver in the kitchen. The assault then continued into the living room. However, the theft did not occur until all parties went upstairs and Roberts took money from the victim's bedroom.

{¶47} Once the robbery was completed, Roberts assaulted the victim in his recording studio by again hitting him with the revolver. The aggravated robbery resulted in the victim being deprived of approximately $18 cash, while the felonious assault resulted in the victim's severe injuries. *State v. Knight*, 12th Dist. Butler No. CA2016-02-028, 2016-Ohio-7991, ¶ 19 (merger did not apply to felonious assault and aggravated robbery where the conduct and harm of robbing the victim at gunpoint was separate from the conduct and harm of hitting the victim in the head with a gun).

{¶48} Given the facts and circumstances of this case, we find that Gillespie separately committed aggravated robbery and felonious assault so that the convictions are not crimes of similar import. As such, the trial court was correct in not merging the convictions for sentencing purposes and Gillespie cannot prove plain error. Gillespie's fourth assignment of error is overruled.

{¶49} Assignment of Error No. 5:

{¶50} THE TRIAL COURT ERRED BY ORDERING CONSECUTIVE SENTENCES ON THE FIREARM SPECIFICATIONS ATTACHED TO GILLESPIE'S UNDERLYING OFFENSES.

{¶51} Gillespie argues in her fifth assignment of error that the trial court erred by ordering that she serve the firearm specifications consecutively.

{¶52} Pursuant to R.C. 2929.14(B), an offender receives an additional penalty when a firearm is involved in the commission of an offense. An offender who displays, brandishes, or uses a firearm to facilitate the commission of an offense is subject to a three-year prison term according to R.C. 2929.14(B)(1)(a)(ii). Ohio law is clear that the sentence for a firearm specification must be served consecutive to and prior to the sentence that is imposed for the underlying felony. R.C. 2929.14(C)(1)(a); *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, ¶ 8.

{¶53} According to R.C. 2929.14(B)(1)(g),

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section *for each of the two most serious specifications* of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.)

{¶54} Gillespie was convicted of multiple felonies, including aggravated robbery and felonious assault. Therefore, the trial court was required by R.C. 2929.14(B)(1)(g) to sentence Gillespie to two firearm specifications. Gillespie does not contend that the statute is not applicable to her. Instead, she argues that the trial court was required to order the firearm specifications concurrently once the trial court ordered the underlying felony sentences to run concurrent to each other. We disagree.

{¶55} This court has addressed the statute at issue and found that the language in R.C. 2929.14 requires a sentencing court to order sentences for firearm specifications consecutively. *State v. Isreal*, 12th Dist. Warren No. CA2011-11-115, 2012-Ohio-4876, ¶ 69-70. In *Isreal*, we found that "sentences for multiple gun specifications should be run consecutive to each other" and reasoned that R.C. 2929.14(B)(1)(g) carved out an exception to the general rule that a trial court may not impose multiple firearm specifications for crimes committed within a single transaction. We further reasoned,

> the mandatory language of the statute ("the court shall impose") also indicates the General Assembly's intention that the defendant serve multiple sentences for firearm specifications associated with the enumerated crimes, such as murder or felonious assault. Had the Legislature intended a *per se* rule

- 14 -

that sentences for firearm specifications must be served concurrent with one another, it could have stated as much. Or, the Legislature could have chosen not to codify R.C. 2929.14(B)(1)(g), which serves as an exception to the rule that multiple firearm specifications must be merged for purposes of sentencing when the predicate offenses were committed as a single criminal transaction.

*Id.* at ¶ 73.

{¶56} While the statute requires the trial court to order the firearm specifications consecutively, the statute does not impair a trial court's ability to order the sentences for the underlying offenses be served concurrently so long as the trial court makes such an order explicitly in its sentencing entry. *See State ex rel. Fraley v. Ohio Dept. of Rehab. & Correction*, 161 Ohio St.3d 209, 2020-Ohio-4410; *State v. Fortune*, 11th Dist. Lake No. 2014-L-117, 2015-Ohio-4019; and *State v. Bollar*, 5th Dist. Stark No. 2020 CA 00077, 2021-Ohio-1578.

{¶57} In *Fraley*, the Ohio Supreme Court was asked to determine whether the appellant was required to serve the sentences for firearm specifications consecutively or concurrently when the trial court ordered the sentences for the underlying felonies be served concurrent to each other, but failed to address how the firearm specifications were to be served. The Ohio Supreme Court specifically addressed the firearm specification statute and how the mandatory nature of the statute impacted underlying sentences.

R.C. 2929.14(C)(1)(a) also states that a sentence for a firearm specification must be served 'consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.' As a matter of law, then, Fraley is required to serve both three-year prison terms for the firearm specifications prior to serving the time for the underlying offenses, for an aggregate term of 13 years.

*Id.* at ¶ 12. However, the court ultimately sided with Fraley because the sentencing court did not specify in its entry that the firearm specifications attached to the concurrent underlying sentences were to be run consecutive to one another or consecutive to the

underlying sentence. Because of that ambiguity in the entry, the rule of lenity resulted in resolving the ambiguity in the sentencing entry in favor of the defendant so that the firearm specifications were also run concurrent to each other.

{¶58} However, when the trial court expressly follows the mandates of the firearm specification statute and orders that the specifications be served consecutively, there is no ambiguity in the defendant's sentence and the defendant is correctly sentenced to a consecutive sentence. *Fortune*, 2015-Ohio-4019. Therein, the Eleventh District determined, and we agree, that R.C. 2929.14(B)(1)(g), "does not require that a consecutive sentence be given on each underlying offense for all firearm specifications to be valid and for a defendant to receive separate sentences on each."

{¶59} Instead, the *Fortune* court reasoned that the appellant's indictment included separate firearm specifications, he pled guilty to each of the specifications, and he was convicted of each. Furthermore, the appellant was sentenced on each offense and specification. Specifically, the trial court ordered concurrent sentences on two of the three underlying felonies. The *Fortune* court concluded, and again we agree, that the order of concurrent sentences for the underlying felony convictions did not eliminate one of the specifications for which the defendant could be sentenced. Nor did such concurrent sentence relieve the trial court of its statutory duty to follow the precepts of R.C. 2929.14(B)(1)(g) and order that the two most serious firearm specifications be ordered consecutive to one another and consecutive to the underlying felony sentence.

{¶60} Unlike *Fraley* but like *Fortune*, the sentencing court here specifically ordered the specification sentences be served consecutive to one another. Moreover, the sentencing entry also ordered, as set forth in the statute, that the specifications were to be served first, *before* the underlying concurrent sentence for aggravated robbery and felonious assault. As such, whether the underlying sentences were to be served

concurrently or consecutively is of no legal import because any ordered underlying sentence would start *only after* the firearm specification sentences had been fully served according to statute.

{¶61} Additionally, given that the trial court's sentencing entry expressly laid forth the consecutive nature of the specifications versus the concurrent nature of the underlying felony sentences, the concern over ambiguity discussed in *Fraley* is nonexistent and all involved clearly understood the trial court's sentence and how Gillespie would be ordered to serve it.

{¶62} Similarly, and while not directly on point, the court in *Bollar* determined that the trial court properly ordered firearm specifications consecutive to one another despite the underlying felonies merging as allied offenses.[2] Therein, the appellant pled guilty to involuntary manslaughter, felonious assault, and having weapons while under disability. The trial court merged the felonious assault and involuntary manslaughter offenses because they were allied, but ordered the accompanying firearm specifications for the two most serious charges, involuntary manslaughter and felonious assault, to run consecutively to each other and consecutive to the sentence for involuntary manslaughter.

{¶63} The court reasoned that the appellant's guilt, as determined by his guilty pleas, "survived the trial courts merger of the felonious assault and involuntary manslaughter offenses" so that "the trial court was required by R.C. 2929.14(B)(1)(g) to sentence Bollar to the two most serious firearm specifications that accompanied his felony guilty pleas." *Bollar* at ¶ 28. So too did Gillespie's guilt for both felonious assault and

---

2. The Ohio Supreme Court has accepted *Bollar* for review as being in conflict with *State v. Doyle*, 8th Dist. Cuyahoga No. 107001, 2019-Ohio-979 and *State v. Roper*, 9th Dist. Summit Nos. 26631 and 26632, 2013-Ohio-2176. *08/18/2021 Case Announcements*, 2021-Ohio-2795. However, the disposition of this conflict does not have a direct impact on the case sub judice, as the trial court did not merge the offenses, only ordered the sentences run concurrent with each other. We note that "[t]he imposition of concurrent sentences is not the equivalent of merging allied offenses." *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, ¶ 17. However, we find the rational employed in this matter instructive and persuasive.

aggravated robbery survive the trial court's order that her sentences for those felonies be served concurrently.

{¶64} Here, and as guided by the above-mentioned jurisprudence, we find that the trial court properly ordered Gillespie to serve her firearm specification sentences consecutive to one another, and consecutive to the concurrent sentence for aggravated robbery and felonious assault. The trial court expressly ordered such in its sentencing entry, and it had the statutory authority and duty to do so given the mandatory nature of R.C. 2929.14. As such, Gillespie's fifth assignment of error is overruled.

{¶65} Assignment of Error No. 6:

{¶66} GILLESPIE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶67} Gillespie argues in her final assignment of error that her trial counsel was ineffective for failing to seek a separate trial from Roberts and failing to argue merger.

{¶68} In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance. *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

{¶69} "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* The failure to satisfy either the deficiency prong or the prejudice prong of the test is fatal to a claim of ineffective assistance of counsel. *State v. White*, 12th Dist. Clermont No. CA2020-07-039, 2021-Ohio-3284, ¶ 43.

{¶70} This court has repeatedly held that trial strategy, even debatable strategy, is

not a basis for finding ineffective assistance of counsel. *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 98; *State v. Wood*, 12th Dist. Madison No. CA2018-07-022, 2020-Ohio-422, ¶ 28. This applies even in cases where the trial strategy used was ultimately unsuccessful and where there was another possible and better trial strategy available. *State v. Blaylock*, 12th Dist. Butler No. CA2020-11-113, 2021-Ohio-2631, ¶ 13. *See* also, *State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 43 ("the fact that the trial strategy was ultimately unsuccessful or that there was another possible and better strategy available does not amount to ineffective assistance of counsel").

{¶71} Gillespie first argues that her trial counsel was ineffective for allowing her trial to proceed jointly with Roberts. She also argues that her trial counsel was ineffective for failing to argue merger at sentencing. Given our determination that Gillespie's convictions were not allied offenses, there is no indication in the record that any argument set forth by trial counsel regarding merger would have been successful. Therefore, Gillespie was not denied effective assistance of counsel on this ground.

{¶72} Nor was Gillespie denied effective assistance of counsel regarding the joint trial. According to Crim.R. 8(B),

> Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

According to Crim.R. 14, if the defendant or state is prejudiced by a joinder of defendants in a trial, "the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶73} The record clearly indicates that Gillespie and Roberts were alleged to have

participated in the same acts or transactions that constituted the felonious assault and aggravated robbery of the victim. While Gillespie argues on appeal that she should have had a separate trial, she agreed before the trial court to a joint trial "hoping for judicial economy."[3]

{¶74} Moreover, the trial court specifically asked whether Gillespie had "weighed her options" regarding the possibility of having a joint trial. At that time, trial counsel confirmed that Gillespie had weighed her options and that her preference was to have a joint jury trial. Thus, there is clear indication in the record that such decision involved trial strategy and that Gillespie proceeded after full consideration of the issue.

{¶75} Moreover, Gillespie has failed to demonstrate that she was prejudiced in any way by a joint trial. Gillespie does not address any specific aspect of the record or trial transcript to demonstrate that the results of her trial would have been different had she had a separate trial. *See State v. Bice*, 12th Dist. Clermont No. CA2008-10-098, 2009-Ohio-4672, ¶ 54 (finding no ineffective assistance of counsel where trial counsel did not file a motion to sever because appellant failed to demonstrate that the results of the trial would have been different had severance been pursued). Instead, Gillespie argues generally that the victim was able to testify to statements made by Roberts because he was a codefendant in her trial.[4] However, Gillespie does not point to which of the victim's statements prejudiced her, or even that such statements would not have been admissible against her had she been tried separately.

{¶76} Regardless of whether Gillespie had been tried together with Roberts or separately, the proof was overwhelming that she was Roberts' accomplice during the

_____

3. The possibility a jury might find the principal codefendant guilty and somehow absolve the complicator co-defendant, is not an unknown trial strategy.

4. While not specifically addressed, we assume that Gillespie is referencing a statement of a party opponent as being non-hearsay. Evid.R. 801(D)(2).

crimes, and that she clearly aided and abetted during the felonious assault and aggravated robbery. Nothing indicates that severance would have resulted in any different result. As such, Gillespie is unable to demonstrate that she was denied the effective assistance of counsel, and her final assignment of error is overruled.

{¶77} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.