[Cite as *State v. Buell*, 2022-Ohio-3102.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-12-026 |
| | : | O P I N I O N |
| - vs - | | 9/6/2022 |
| | : | |
| DERRICK S. BUELL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CR 20200300

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

**HENDRICKSON, J.**

{¶1} Appellant, Derrick S. Buell, appeals from his convictions in the Fayette County Court of Common Pleas for breaking and entering and theft. For the reasons set forth below, we affirm appellant's convictions.

{¶2} At approximately 3:30 a.m. on November 12, 2020, Sergeant Dirk Witherspoon, a deputy with the Fayette County Sheriff's Office, was patrolling in Fayette County, Ohio in a marked patrol car. While on Bloomingburg-New Holland Road in Marion

Township, Sgt. Witherspoon saw what appeared to be a disabled, hatchback car parked in a farm lane, about 100 yards away from a barn owned by Mike Reeves. Sgt. Witherspoon stopped his patrol car to check on the disabled vehicle. The vehicle had frost on its hood and there was no one inside it. Sgt. Witherspoon drove away from the disabled vehicle, looking to see if anyone was in the area. He did not find anyone and, approximately two minutes later, turned around and drove back towards the area where the hatchback had been parked.

{¶3} Sgt. Witherspoon discovered the vehicle had been moved and was now parked next to Reeves' barn door. The barn door's glass window had been removed to allow for forcible entry into the building. A male, later identified as appellant, was loading items into the hatchback. Sgt. Witherspoon ordered appellant to stop and show his hands, but appellant jumped into the hatchback and fled from the scene. Other than appellant, Sgt. Witherspoon had not observed any other individual near the hatchback or Reeves' barn.

{¶4} Sgt. Witherspoon gave chase to the hatchback, keeping a visual on the vehicle during a 15-minute-long pursuit. He did not observe any passengers get in or out of the vehicle during the pursuit. Appellant's vehicle was eventually stopped by law enforcement. Sgt. Witherspoon processed the hatchback by first photographing the vehicle and its contents and then by removing the contents. Sgt. Witherspoon found a number of hand tools and power tools loaded into the back of the hatchback, as well as a hamper full of clothes and boots. Though the back of the vehicle was packed full of items, the front passenger seat did not have any items loaded on it. A spoon and a syringe were located in the passenger area.

{¶5} After the contents of the hatchback were inventoried, the items found in the hatchback were transported to the sheriff's office annex. Sgt. Witherspoon contacted

Reeves and asked Reeves to meet him at the barn. When they arrived at the barn, Sgt. Witherspoon observed that the barn was in the same condition as it had been when he first observed appellant at the barn. The window to the door was removed and the door was unlocked. Reeves informed the sergeant that he had not left the barn that way the night before the break-in. Rather, Reeves indicated the door had been shut and locked the night before, with the window plate still intact. Sgt. Witherspoon examined the barn door for blood, hair, and fingerprint evidence but none was found.

{¶6} Upon entering the barn, Reeves noticed that several items in the barn had been disturbed and several more were missing. Drill bits and other tools he had stacked and stored along benches in the barn were gone. Reeves accompanied Sgt. Witherspoon to the sheriff's office annex, where he looked at the items recovered from the hatchback and was able to identify a "third of a pickup load of [his] tools" which had been taken from the barn. Reeves estimated that about 20 percent of the items recovered from the back of the hatchback did not belong to him, including the hamper of clothes and boots, but the remainder of the items were his. Reeves identified seventeen items that belonged to him, including multiple socket sets, a torque set, a vacuum, a router, a "sawzaw," a leaf blower, a drill, a band saw, a battery checker, a stud finder, a hammer set, and a LED stick light. Reeves indicated that the value of the items taken from him was "a couple thousand [dollars] or more," and he stated appellant did not have his permission to be on his property, to enter his barn, or to take the tools removed from the barn. Reeves' property was returned to him on that date.

{¶7} Appellant was indicted on one count of failing to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), a felony of the third degree, one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree, and one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree as the

value of the property stolen was alleged to have been more than $1,000 but less than $7,500. Appellant pled not guilty to the charges. Upon a request from the state, the trial court severed the failure to comply charge from the theft and breaking and entering charges. On April 16, 2021, appellant pled guilty to the failure to comply charge and sentencing was reserved until after appellant's trial on the remaining charges.

{¶8} On May 11, 2021, a jury trial was held on the theft and breaking and entering charges. Sgt. Witherspoon and Reeves testified as to the events described above. The state also introduced into evidence the dashcam recording of Sgt. Witherspoon's pursuit of the hatchback, photographs of the hatchback and the items found in the hatchback, and a property receipt of the tools returned to Reeves. Appellant did not call any witnesses but did introduce into evidence some photographs of the hatchback's passenger seat area and of the hamper recovered from the vehicle. After considering the evidence, the jury found appellant guilty of theft and breaking and entering.

{¶9} Appellant was subsequently sentenced to an agreed upon 30-month prison term for failing to comply with an order or signal of a police officer. The court also imposed 12-month prison terms on the theft and breaking and entering convictions. The prison terms were all run consecutively to one another, for an aggregate prison term of 54 months.

{¶10} Appellant appealed, raising three assignments of error for review. For ease of discussion, his second and third assignments of error will be addressed together.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED WHEN IT DID NOT PROVIDE THE JURY WITH SEPARATE VERDICT FORMS FOR PRINCIPAL OFFENDER AND COMPLICITOR IN VIOLATION OF CRIM.R. 31(A) AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

- 4 -

**{¶13}** In his first assignment of error, appellant argues that "breaking and entering and theft and complicity to these two crimes are different offenses" and that the trial court erred by not providing the jury with separate verdict forms for finding appellant guilty of the offenses as the principal offender or as a complicitor. Without separate verdict forms, appellant contends it cannot be determined whether the jury unanimously found him guilty as a complicitor or as a principal offender, thereby violating Crim.R. 31(A).[1]

**{¶14}** Through his cross-examination of the state's witnesses, appellant presented a defense that it was possible that an unknown and unidentified individual, and not himself, was the perpetrator of the theft and breaking and entering crimes. This individual, appellant suggested, could have been hiding inside the barn or around the side of the barn when Sgt. Witherspoon first arrived. In response to appellant's defense, the state requested a complicity jury instruction be provided, arguing appellant could be convicted as the principal offender if the jury believed appellant personally removed Reeves' tools from the barn after gaining forcible entry or as an aider and abettor who was complicit in the crimes if the jury concluded an unidentified individual had committed those acts but appellant had assisted in the crimes. Appellant objected, but the court overruled the objection and provided the complicity instruction to the jury.

**{¶15}** The jury was provided with only one verdict form, which allowed the jury to write in "guilty" or "not guilty" with respect to the individual crimes of breaking and entering and a theft. With respect to the theft offense, the verdict form also permitted the jury to make an additional finding that the value of the property stolen was "$1,000.00 or more and less than $7,500.00" or was "[l]ess than $1,000." Appellant's counsel did not object to the jury forms. We therefore apply a plain-error standard of review to his arguments. *See State*

---

1. Crim.R. 31(A) provides that "[t]he verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court."

*v. Beshara*, 7th Dist. Mahoning No. 07 MA 37, 2009-Ohio-6529, ¶ 75 (noting that a plain-error analysis applied where the defendant objected to a general jury charge of complicity but failed to object to the trial court's subsequent decision to submit verdict forms to the jury without reference to complicity); *State v. Alexander*, 6th Dist. Wood No. WD-02-047, 2003-Ohio-6969, ¶ 67-70 (finding a plain-error standard of review applied where the defendant did not object to a single verdict form being provided to the jury, rather than separate verdict forms for complicitor and principal offender, despite a prior objection to a complicity jury instruction).

{¶16} Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997). Courts should notice plain error, "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶ 14.

{¶17} "Under the principle of complicity or accomplice liability, an individual may be found guilty if he solicits, aids, abets or conspires with another individual to commit an offense and shares the criminal intent of an individual who commits the principal offense." *State v. Horton*, 10th Dist. Franklin No. 13AP-855, 2014-Ohio-2785, ¶ 8, citing *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Under Ohio law, 'there is no distinction between a defendant convicted of complicity or as a principal offender.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 247, quoting *Alexander* at ¶ 70. *See also State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 83 ("the legal distinction between principal offender and aider and abettor is not viewed as significant"). Pursuant to

R.C. 2923.03(F), "[a] charge of complicity may be stated in terms of [that] section, or in terms of the principal offense."

{¶18}  In light of the foregoing, numerous appellate districts have determined that a trial court does not commit plain error by not providing separate jury verdict forms for the principal offense and complicity to that offense.  *See, e.g., Lewis* at ¶ 82-84 ("the failure to require the jury to distinguish on the verdict forms whether the defendant was found guilty as an aider and abettor is not a plain error warranting the reversal of conviction"); *Alexander*, 2003-Ohio-6969 at ¶ 64-70 ("there was no need for separate verdict forms because there is no distinction between a defendant convicted of complicity or as a principal offender.  * * * [T]he use of a single verdict form was not prejudicial"); *Beshara*, 2009-Ohio-6529 at ¶ 72-77 (trial court's failure to include a complicity charge on the verdict forms did not rise to level of plain error as there was "no significant distinction between a defendant convicted as a complicitor and one convicted as the principal offender"); *State v. Horton*, 10th Dist. Franklin No. 13AP-855, 2014-Ohio-2785, ¶ 7-10 ("we cannot conclude that the trial court's failure to provide separate jury verdict forms for aggravated murder and complicity to aggravated murder constitutes plain error").

{¶19}  In 2016, the Ohio Supreme Court had the opportunity to consider the issue. In *McKelton*, the defendant challenged his conviction, arguing the trial court "created an unacceptable risk" that the jury did not unanimously convict him of aggravated murder because it did not provide separate verdict forms for the principal offense and complicity to the offense.  *McKelton*, 2016-Ohio-5735 at ¶ 247.  The court rejected the defendant's argument, specifically referencing the *Horton* decision and the other "intermediate appeals courts [that] have held that a trial court need not 'provide separate jury verdict forms for the principal offense and complicity to that offense.'"  *McKelton*, 2016-Ohio-5735 at ¶ 248, quoting *Horton* at ¶ 10.  The court stated, "[b]y the same reasoning [as the intermediate

appeals courts], we reject McKelton's claim that the trial court was required to give specific instructions or provide a separate verdict on complicity." *Id.*

**{¶20}** Despite the supreme court's decision in *McKelton* and the line of appellate court decisions holding that a trial court does not commit plain error in not providing separate jury verdict forms for the principal offense and complicity to that offense, appellant nonetheless argues this court should reverse his conviction pursuant to *Christian v. Wellington*, 739 F.3d 294 (6th Cir.2014).

**{¶21}** In *Wellington*, a federal habeas case, a defendant challenged the state's ability to retry him on a charge of complicity to felonious assault when a jury returned a not guilty verdict on the principal offender charge of felonious assault but was hung on the complicity to felonious assault charges. *Id.* at 296. The defendant argued a retrial would violate the Double Jeopardy Clause of the Fifth Amendment. The district court denied the writ and the Sixth Circuit affirmed upon concluding that complicity to felonious assault and felonious assault were not the same crime as complicity is "focused on rooting out acts such as soliciting someone else, aiding and abetting someone else, conspiring with someone else, or causing an innocent person to harm the victim" whereas felonious assault criminalizes one's own harmful acts. *Id.* at 299. The court concluded the defendant's "upcoming prosecution on the charge of complicity to felonious assault, on which the first jury hung, does not subject him to double jeopardy." *Id.* at 300.

**{¶22}** The circumstances in *Wellington* differ significantly than those in the present case. In *Wellington*, the issue was whether the double jeopardy clause prohibited retrial of an offense following a hung jury. The *Wellington* court was not asked to address whether separate jury forms are required every time a criminal defendant is tried for a crime for which he could be criminally liable as a principal offender or a complicitor. The *Wellington* court did not address R.C. 2923.03(F) or analyze state case law discussing the

appropriateness of a single verdict jury form. Furthermore, when the Ohio Supreme Court addressed the jury form issue in *McKelton*, more than two years after *Wellington* was decided, the supreme court did not apply the holding of *Wellington*. Instead, the supreme court cited favorably the case law holding that trial courts need not provide separate jury verdict forms for the principal offense and complicity to that offense.

{¶23} Accordingly, we find that the trial court's use of single verdict form was not prejudicial and did not amount to plain error. A charge of complicity may be stated as a violation of R.C. 2923.03 or in terms of the principal offense. In this case, the state presented evidence that would allow the jury to conclude that appellant was criminally liable as the principal offender for stealing Reeves' tools from the barn after gaining forcible entry into the barn or was criminally liable as a complicitor for assisting another in the commission of the crimes by helping to load the stolen tools into the hatchback and by serving as the getaway driver. Appellant has failed to demonstrate that separate verdict forms were required or that the outcome of trial would have been different if separate verdict forms had been utilized at trial. *McKelton*, 2016-Ohio-5735, ¶ 247-248; *Beshara*, 2009-Ohio-6259 at ¶ 77; *Horton*, 2014-Ohio-2785 at ¶ 10; *Lewis*, 2013-Ohio-3974 at ¶ 85; *Alexander*, 2003-Ohio-6969 at ¶ 70. Furthermore, contrary to appellant's contentions, Crim.R. 31(A) was complied with as the verdict was unanimous, in writing, signed by all twelve jurors, and returned by the jury to the judge in open court. Appellant's first assignment of error is, therefore, without merit and is overruled.

{¶24} Assignment of Error No. 2:

{¶25} THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶26} Assignment of Error No. 3:

{¶27} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶28} In his second and third assignments of error, appellant argues his convictions for breaking and entering and theft were not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶29} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶30} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original

trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

**{¶31}** Appellant was convicted of theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." Where the value of the property stolen is $1,000 or more and is less than $7,500, the offense is a felony of the fifth degree. R.C. 2913.02(B)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶32}** Appellant was also convicted of breaking and entering in violation of R.C. 2911.13(A), which provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."

**{¶33}** After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find appellant's convictions for breaking and entering and theft are not against the manifest weight of the evidence and are supported by sufficient evidence. The

state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. The fact that the state relied on circumstantial evidence in proving appellant's guilt does not make his convictions any less sound. As this court has repeatedly recognized, a defendant's convictions may be based on circumstantial evidence alone. *State v. Brown*, 12th Dist. Butler No. CA2014-12-257, 2015-Ohio-3407, ¶ 12; *Wells* at ¶ 33. "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. Circumstantial evidence inherently possesses the same probative value as direct evidence, and a conviction based on circumstantial evidence is no less sound than one based on direct evidence. *Brown* at ¶ 12.

{¶34} Through the presentation of Sgt. Witherspoon's and Reeves' testimony, the state established that Reeves' locked barn had been forcibly broken into and tools from inside the barn had been removed and placed in the back of appellant's hatchback car without Reeves' consent. Though appellant was not directly observed removing the glass window to the barn's door or observed inside the barn by Sgt. Witherspoon, circumstantial evidence demonstrated he had committed the offenses. As Sgt. Witherspoon testified, appellant was the only individual observed at or near the barn at 3:30 a.m. and appellant was seen loading items into the back of his hatchback, which he had moved closer to the barn. When Sgt. Witherspoon instructed appellant to "stop" and "show his hands," appellant ignored the sergeant's commands and fled from the scene in the hatchback. Once the hatchback was eventually stopped, items belonging to Reeves, which had been stored in the barn, were located in the vehicle. These items included multiple socket sets, a torque set, a vacuum, a router, a "sawzaw," a leaf blower, a drill, a band saw, a battery checker, a

stud finder, a hammer set, and a LED stick light. Reeves testified the value of the tools taken from him was "a couple thousand [dollars] or more." Reeves also testified that he had never given appellant permission to be on his property, to enter his barn, or to remove the tools from the barn.

{¶35} From the aforementioned evidence, the jury was entitled to find beyond a reasonable doubt that appellant committed the offenses of breaking and entering and theft. Even if the jury gave some credit to appellant's defense that another individual was involved in the crimes and this individual was the one who removed the barn door's window to gain access to the barn, the state produced evidence that appellant aided and abetted in the crimes by helping to load the stolen goods and serving as the getaway driver. Appellant's convictions are therefore supported by sufficient evidence and are not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. Appellant's second and third assignments of error are overruled.

{¶36} Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.