[Cite as *State v. Trafton*, 2023-Ohio-122.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-06-040 |
| | : | O P I N I O N |
| - vs - | | 1/17/2023 |
| | : | |
| RAHEEM TRAFTON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR37784

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, Raheem Trafton, appeals his conviction in the Warren County Court of Common Pleas after a jury found him guilty of one count of fifth-degree felony theft. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On February 22, 2021, the Warren County Grand Jury returned an indictment

charging Trafton with one count of fifth-degree felony theft in violation of R.C. 2913.02(A)(1).[1] The charge arose after it was alleged Trafton was complicit by aiding and abetting four others in the theft of over $1,000 in property from a Best Buy store located in Warren County, Ohio during the early evening hours of January 19, 2021. The matter ultimately proceeded to a one-day jury trial held on April 7, 2022. During trial, the jury heard testimony from three witnesses offered by the state: two Best Buy employees and a sergeant with the Warren County Sheriff's Office, Sergeant John Smith. The jury also viewed video footage captured by Best Buy's security cameras and Sergeant Smith's cruiser camera. Trafton did not present any witnesses or offer any exhibits in his defense.

*Summary of Testimony and Evidence Presented at Trial*

**{¶ 3}** On the evening of January 19, 2021, a gold Pontiac Aztek pulled into and parked in the parking lot of the Best Buy store located at 9871 Waterstone Blvd. Deerfield Township, Warren County, Ohio. Over the next three minutes, four individuals, three males and one female, made a staggered exit from the vehicle and into the Best Buy store's front entrance. The first two were a male in a dark colored jacket along with the lone female carrying the brown purse. These two were then followed a minute later by a male in a gray "puffy" coat and a male wearing green tie-dyed sweatpants. There is no dispute that the vehicle's driver was not one of the four individuals who exited from the vehicle. There is also no dispute that, as one of the Best Buy employees testified, it is not unusual for a group of individuals who are planning to steal property from Best Buy to make a staggered entrance into the store.

**{¶ 4}** The male in the dark colored jacket and the lone female were the first to enter

---

1. "Where the value of the property stolen is $1,000 or more and is less than $7,500, the offense is a felony of the fifth degree." *State v. Buell*, 12th Dist. Fayette No. CA2021-12-026, 2022-Ohio-3102, ¶ 31, citing R.C. 2913.02(B)(2).

the Best Buy store. Upon entering the store, this male and female slowly made their way towards the Best Buy store's computer department. The other two individuals, the male wearing the gray "puffy" coat and the male wearing green tie-dyed sweatpants, entered the store a few minutes later. Once these two males were inside the store, they fanned out across the store's showroom before also meeting back up in the Best Buy store's computer department. These four individuals were then observed, either directly by store employees or indirectly via the store's security cameras, placing various items underneath their clothing and down into their pants. The lone female was also observed putting items into her purse. These items included several smart keyboards and a smart home lock that had a combined value of over $1,000.[2]

{¶ 5} After taking possession of these items, three of the four individuals, the male wearing the dark colored jacket, the male wearing the gray "puffy" coat, and the lone female, exited the store and got back into the gold Pontiac Aztek still parked and waiting outside. The vehicle's driver then made a beeline out of the Best Buy store's parking lot and onto the surrounding streets leaving the fourth individual, the male wearing green tie-dyed sweatpants, behind inside the store.[3] Sergeant Smith effectuated a traffic stop of the vehicle a few minutes later. Prior to that stop, Sergeant Smith observed what appeared to be a Black female driving the vehicle. Sergeant Smith also observed three other individuals inside the vehicle throwing items into the vehicle's rear hatch area. These items were later identified as the same items those three individuals had just stolen from the Best Buy store

---

2. The keyboards were later identified as "Apple iPad Pro Keyboards" that retailed for either $300 or $350 depending on the size of the keyboard. The smart home lock was later identified as an "August Smart Lock" that retailed for $249. The record indicates that when taken together the keyboards and the smart home lock had a total retail value of $1,549.

3. The male wearing the green tie-dyed sweatpants was observed putting several smart watch bands for an Apple Watch into his jacket prior to exiting the store. This individual was apprehended a brief time later after police tased him following an altercation outside a nearby bookstore.

no more than 10 minutes before.

{¶ 6} After the gold Pontiac Aztek came to a stop, Sergeant Smith approached the vehicle's driver's side door and requested the vehicle's four occupants provide him with identification. While waiting, Sergeant Smith told the vehicle's four occupants that "they were stopped due to the description of the vehicle being involved in an active theft at Best Buy." Sergeant Smith also told the vehicle's four occupants that he would "like them to be truthful about the matter" so that they could "proceed through it." Sergeant Smith did not receive any confused looks or questions from any of the vehicle's four occupants about what he was talking about. Sergeant Smith instead testified that he received "[a]ffirmative responses," "[n]odding of heads," and possibly "a verbal yes" from each of the vehicle's four occupants, including the vehicle's driver.

{¶ 7} Following this brief exchange, Sergeant Smith then asked the vehicle's driver if the driver was "just waiting for 'em and driving?" The driver responded to Sergeant Smith's questions affirmatively. The vehicle's driver then handed Sergeant Smith an Ohio driver's license that belonged to a male named "Raheem Trafton."[4] Sergeant Smith testified that this surprised him because the driver was at that time dressed in "woman's attire" with a purple shoulder length haired wig and wearing several types of jewelry. Sergeant Smith testified that he then asked the vehicle's driver, who did not have any facial hair, if the driver was biologically a male or a female. Sergeant Smith testified that the driver replied, "I'm a male" and that people called him either "Ray-Ray" or "Ray."

{¶ 8} Sergeant Smith testified the driver's appearance matched the "physical attributes," facial structure, and facial features of "Raheem Trafton," the individual depicted

---

4. Trafton claims in his brief that the vehicle's driver provided Sergeant Smith with an Ohio state identification card rather than an Ohio state driver's license. The record does not support this contention. *See* Trial Transcript, p. 157.

on the Ohio driver's license provided to him by the vehicle's driver. Sergeant Smith testified it was not until this time that he became certain the vehicle's driver was a male dressed like a woman "wearing female attire" and that this person was, in fact, a male named "Raheem Trafton." Sergeant Smith testified this was because it was "just the – the dress that identified him as a female," nothing else. Sergeant Smith testified that he then confirmed his suspicions by asking the vehicle's driver again if the driver was a male and whether the driver's name was "Raheem Trafton." Sergeant Smith testified that the driver responded affirmatively to these questions and "did confirm that."

{¶ 9} Sergeant Smith then testified and identified the bearded individual sitting at the defense table, Trafton, as the driver of the gold Pontiac Aztek he had pulled over on the evening of January 19, 2021. Sergeant Smith testified that he was able to make this identification because he got a "good look" at Trafton, both with and without the medical mask Trafton had been wearing, while he and Trafton were standing close to each other, face-to-face, at the vehicle's tailgate.[5] Sergeant Smith also testified that Trafton did not act surprised or shocked to learn that any of the vehicle's three other passengers had just been involved in a theft at the Best Buy store where he had dropped them off. Sergeant Smith testified the same was true when the stolen items were removed from the vehicle's rear hatch area and placed on the hood of his cruiser. Sergeant Smith testified that Trafton was instead "very calm" during the entire ordeal.

*The Trial Court's Final Jury Instructions and Trafton's Appeal*

{¶ 10} Once both parties rested, and closing arguments were completed, the trial court provided its final instructions to the jury. These included an instruction on complicity

---

5. Although not expressly stated in the record, given the status of the COVID-19 pandemic during the winter of 2021, it is safe to assume that the vehicle's driver was wearing a medical mask, for both self-protection and the protection of others from the spread of the highly contagious COVID-19 virus.

by aiding and abetting without objection. Upon being so instructed, the jury then exited from the courtroom to begin its deliberations. Less than an hour later, the jury returned to the courtroom and issued its verdict finding Trafton guilty as charged. The trial court then revoked Trafton's bond and Trafton was taken to jail to await sentencing. The trial court held a sentencing hearing the following month where it sentenced Trafton to community control for a period of three years. The trial court also ordered Trafton to stay out of all Best Buy stores and required Trafton to pay court costs. This was in addition to ordering Trafton to complete an integrated cognitive behavioral change class entitled "Thinking for a Change." Trafton now appeals his conviction, raising one assignment of error for review.

**Trafton's Single Assignment of Error**

{¶ 11} THE TRIAL COURT ERRED IN DENYING APPELLANT'S CR.R. 29 MOTION, THE INSTRUCTING [OF] THE JURY ON COMPLICITY, AND CONVICTING APPELLANT.

{¶ 12} To support his single assignment of error, Trafton raises four arguments for this court's consideration. Those four arguments are: (1) it was error for the trial court to instruct the jury on complicity; (2) it was error for the trial court to deny his Crim.R. 29(A) motion for acquittal; (3) his conviction was against the manifest weight of the evidence; and (4) he received ineffective assistance of counsel. We will address each of Trafton's four arguments in turn.

*The Trial Court Did Not Err by Instructing the Jury on Complicity*

{¶ 13} Trafton initially argues it was error for the trial court to instruct the jury on complicity. We disagree.

{¶ 14} "A trial court must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 27, citing *State*

*v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "It is within the trial court's discretion to determine whether the evidence presented at trial is sufficient to require a particular jury instruction." *State v. Hall*, 12th Dist. Madison No. CA2007-02-005, 2008-Ohio-1889, ¶ 63. "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Davis* at ¶ 35, citing *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997). A jury instruction on complicity as an aider and abettor is proper if the evidence presented at trial could reasonably be found to support a defendant's guilt under R.C. 2923.03(A)(2). *State v. Stevens*, 12th Dist. Butler No. CA2015-09-020, 2017-Ohio-498, ¶ 37, citing *State v. Benson*, 12th Dist. Butler No. CA2004-10-254, 2005-Ohio-6549, ¶ 29.

{¶ 15} Pursuant R.C. 2923.03(A)(2), no person, acting with the kind of culpability required for the commission of an offense, shall "aid or abet another" in committing the offense. "To be complicit to a crime by aiding and abetting, 'the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *State v. Tunstall*, 12th Dist. Butler No. CA2019-06-090, 2020-Ohio-5124, ¶ 80, quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "It is not enough that an individual be merely present at the scene of a crime." *State v. Sprinkle*, 12th Dist. Warren No. CA2022-02-004, 2022-Ohio-3182, ¶ 11, citing *State v. Salyer*, 12th Dist. Warren No. CA2006-03-039, 2007-Ohio-1659, ¶ 27. The accused must instead actively participate in some way and contribute to the unlawful act. *State v. Geiger*, 12th Dist. Warren No. CA2019-06-062, 2020-Ohio-2679, ¶ 19. "'This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its

commission.'" *State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 7, quoting *Johnson* at 243.

{¶ 16} Trafton did not object to the trial court instructing the jury on complicity as part of its final jury instructions. Trafton also did not object to the complicity instruction the trial court provided to the jury within its final jury instructions. Rather, when asked if there was "anything" that needed to be discussed with respect to the trial court's proposed jury instructions, Trafton's trial counsel stated, "No, Your Honor." By failing to object, Trafton has waived all but plain error. *State v. Evick*, 12th Dist. Clermont No. CA2018-03-016, 2019-Ohio-2791, ¶ 24, citing *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997). "With respect to an allegedly improper jury instruction, plain error exists only where, but for the error, the outcome of the trial would have been clearly different." *State v. Roberts*, 12th Dist. Butler No. CA2001-09-203, 2002-Ohio-4482, ¶ 26, citing *State v. Underwood*, 3 Ohio St.3d 12 (1983). "Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12, citing *State v. Long*, 53 Ohio St.2d 91, 95 (1978).

{¶ 17} Trafton argues it was improper to instruct the jury on complicity because the state failed to offer any evidence to indicate he was anything other than an "accessory after the fact, which is not a crime in Ohio." We agree with Trafton's general contention that, in Ohio, accessory after the fact is not recognized as a crime. *See State v. Williams*, 8th Dist. Cuyahoga No. 107285, 2019-Ohio-2734, ¶ 76, citing *State v. Brown*, 11th Dist. Lake No. 2014-L-037, 2016-Ohio-138, ¶ 148. However, although we agree that accessory after the fact is not considered a crime in Ohio, it is well established that complicity by aiding and abetting may be established by overt acts of assistance such as driving the getaway car or serving as a lookout. *See State v. Buell*, 12th Dist. Fayette No. CA2021-12-026, 2022-

- 8 -

Ohio-3102, ¶ 23; *State v. Gillespie*, 12th Dist. Warren No. CA2021-01-004, 2021-Ohio-3650, ¶ 25. Therefore, because the state offered more than enough evidence that could reasonably be found to support Trafton's guilt of complicity by aiding and abetting given his role as the driver both to and from the Best Buy store where the theft occurred, something that Trafton confirmed when speaking with Sergeant Smith, it was not error, plain or otherwise, for the trial court to instruct the jury on complicity in the manner that it did. Trafton's first argument lacks merit.

*The Trial Court Did Not Err by Denying Trafton's Crim.R. 29(A) Motion for Acquittal*

{¶ 18} Trafton also argues it was error for the trial court to deny his Crim.R. 29(A) motion for acquittal. We disagree.

{¶ 19} "The standard of review for a denial of a Crim.R. 29(A) motion for acquittal is the same as the standard of review for a sufficiency of the evidence claim." *State v. Wilson*, 12th Dist. Fayette No. CA2021-10-023, 2022-Ohio-1146, ¶ 27, citing *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. "Whether the evidence presented is legally sufficient to sustain a verdict is a question of law." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 9, citing *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34.

{¶ 20} Trafton argues it was error for the trial court to deny his Crim.R. 29(A) motion for acquittal because the state failed to offer any evidence that he "knew or had anything to

do with the commission of the theft offense, before the offense." However, as the record indicates, Trafton served as the driver both to and from the Best Buy store where the theft occurred. Trafton confirmed as much when speaking with Sergeant Smith. The record also indicates that Trafton made a beeline out of the parking lot immediately after three of the four individuals he drove to the store returned to the vehicle together, thereby stranding one of those individuals behind inside the store. The record further indicates that Trafton did not act surprised or shocked to learn that his three passengers had just been involved in a theft offense when advised by Sergeant Smith. The record indicates the same was true when the assorted items those three individuals had stolen were removed from the vehicle's rear hatch area and placed on the hood of Sergeant Smith's cruiser. The record indicates that Trafton was instead "very calm" during this entire ordeal.

{¶ 21} This evidence, when viewed in a light most favorable to the state, was sufficient to prove Trafton had the requisite knowledge to be convicted of complicity by aiding and abetting in the theft of property from the Best Buy store beyond a reasonable doubt. This would hold true even if the evidence offered by the state was primarily, if not all, circumstantial. It is well established that complicity by aiding and abetting may be shown by either direct or circumstantial evidence. *State v. Henry*, 12th Dist. Clermont Nos. CA2013-12-095 and CA2013-12-097, 2014-Ohio-4624, ¶ 20. It is equally well established that "circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence." *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 25. Such is the case here. Therefore, finding no error in the trial court's decision to deny the Crim.R. 29(A) motion for acquittal, Trafton's second argument also lacks merit.

*Trafton's Conviction was Not Against the Manifest Weight of the Evidence*

{¶ 22} Trafton further argues his conviction was against the manifest weight of the

evidence. We disagree.

{¶ 23} "A manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *State v. Dean*, 12th Dist. Madison Nos. CA2021-08-013 and CA2021-08-014, 2022-Ohio-3105, ¶ 62, quoting *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When determining whether a conviction is against the manifest weight of the evidence, this court "must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 24} But, even then, it is primarily the trier of fact "who makes determinations of credibility and the weight to be given to the evidence." *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This necessarily means, "[a] conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution." *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 31. This court will overturn a conviction due to the manifest weight of the evidence "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10.

{¶ 25} Trafton argues his conviction was against the manifest weight of the evidence because the "only evidence" he had "anything to do with the theft is all after the fact." Trafton also argues his conviction was against the manifest weight of the evidence because

there was "potential reasonable doubt" about whether he was the individual who was driving the getaway car that evening. However, given the evidence establishing Trafton's role was to serve as the driver both to and from the Best Buy store, and when considering Sergeant Smith's uncontradicted testimony that Trafton was, in fact, the driver of the getaway car that evening, this is not one of those extraordinary circumstances where the evidence presented at trial weighs heavily in favor of acquittal. This holds true even though Sergeant Smith was the only person who testified and identified Trafton as the getaway car's driver. "One witness's testimony is enough to prove a fact of consequence." *State v. Ruggles*, 12th Dist. Warren Nos. CA2019-05-038 and CA2019-05-044 thru CA2019-05-046, 2020-Ohio-2886, ¶ 53. Therefore, finding Trafton's conviction was not against the manifest weight of the evidence, Trafton's third argument likewise lacks merit.

*Trafton Did Not Receive Ineffective Assistance of Trial Counsel*

{¶ 26} Trafton lastly argues he received ineffective assistance of trial counsel. We disagree.

{¶ 27} "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. Because of this, "[a]n appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. Reeves*, 12th Dist. Clermont No. CA2020-01-001, 2020-Ohio-5565, ¶ 32. To establish an ineffective assistance of counsel claim, therefore, Trafton must demonstrate both that: (1) his trial counsel's performance was deficient; and (2) his trial counsel's deficient performance was prejudicial to him. *State v. Simpson*, 164 Ohio St.3d 102, 2020-Ohio-6719, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Trial counsel's performance is considered deficient where "that counsel's

performance fell below an objective standard of reasonable representation * * *." *State v. Drain*, Slip Opinion No. 2022-Ohio-3697, ¶ 67. Trial counsel's deficient performance is deemed prejudicial where there exists "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, ¶ 93. "The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim." *State v. Jewell*, 12th Dist. Warren No. CA2021-09-080, 2022-Ohio-2727, ¶ 19.

{¶ 28} Trafton argues he received ineffective assistance of counsel because his trial counsel failed to "expressly argue" that given his status as "only an accessory after the fact" he "could not be convicted of complicity." However, although we agree that Trafton's trial counsel did not expressly raise this argument below, what arguments to raise and what defenses to present to a jury are unquestionably issues of trial strategy. "This court has repeatedly held that trial strategy, even debatable strategy, is not a basis for finding ineffective assistance of counsel." *State v. King*, 12th Dist. Clermont No. CA2022-01-001, 2022-Ohio-3388, ¶ 45, citing *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 98; and *State v. Wood*, 12th Dist. Madison No. CA2018-07-022, 2020-Ohio-422, ¶ 28. "It is not the role of a reviewing court to second-guess trial strategy." *Id.*, citing *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 52, quoting *State v. Mason*, 82 Ohio St.3d 144, 157 (1998) ("[w]e will 'not second-guess trial strategy decisions'").

{¶ 29} But, even when putting that aside, the record indicates that Trafton was not just an accessory after the fact. Rather, as noted above, the record instead indicates that Trafton served as the driver of the four would-be thieves both to and from the Best Buy store where the theft occurred. The record also indicates Trafton did this with the requisite knowledge to be convicted of complicity by aiding and abetting in the theft of property from that store beyond a reasonable doubt. Therefore, given the record in this case, Trafton

cannot establish either that his trial counsel was deficient by failing to "expressly argue" that given his status as "only an accessory after the fact" he "could not be convicted of complicity" or that he suffered any resulting prejudice therefrom. Trial counsel is not ineffective for failing to make a futile argument. *State v. Martinez*, 1st Dist. Hamilton No. C-180580, 2019-Ohio-3350, ¶ 12, citing *State v. Black*, 1st Dist. Hamilton No. C-100357, 2011-Ohio-1330, ¶ 23 (the failure to make a futile argument is not ineffective assistance of counsel). Accordingly, because Trafton cannot establish that he received ineffective assistance of trial counsel, Trafton's fourth argument lacks merit.

## Conclusion

**{¶ 30}** For the reasons outlined above, and finding no merit to any of the four arguments Trafton raised within his single assignment of error, Trafton's lone assignment of error is overruled.

**{¶ 31}** Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.