[Cite as *In re J.C.*, 2024-Ohio-5918.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE J.C.                                        :

                                        No. 114085

A Minor Child                                     :

[Appeal by the State of Ohio]                     :

                                                  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** December 19, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-23-108692

---

### *Appearances:*

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellee.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Anthony T. Miranda, Alyssa Waite, and
Frank Romeo Zeleznikar, Assistant Prosecuting
Attorneys, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Appellant, the State of Ohio, appeals the juvenile court's May 30, 2024

order denying the State's motion for a mandatory transfer of appellee, J.C., to the

General Division of the Cuyahoga County Court of Common Pleas for the purpose of criminal prosecution pursuant to R.C. 2152.10(B). For the reasons that follow, we reverse.

## I. Factual Background and Procedural History

{¶ 2} J.C. was born on November 24, 2005. He was 17 years old on July 27, 2023, the date of the alleged crime. The nine-count complaint filed in the juvenile court alleged that J.C. was a delinquent child because he committed acts that would constitute the following offenses if committed by an adult: aggravated robbery (Count 1), aggravated burglary (Count 2), three counts of robbery (Counts 3–5), tampering with evidence (Count 6), carrying a concealed weapon (Count 7), attempted grand theft (Count 8), and aggravated menacing (Count 9). Counts 1, 3, 4, 5, and 8 carried one- and three-year firearm specifications. Counts 2 and 6 carried only one-year firearm specifications. The State moved for a mandatory transfer of J.C. to the general division for purposes of criminal prosecution. The parties agree that the only count subject to mandatory transfer was Count 1, aggravated robbery with one- and three-year firearm specifications.

{¶ 3} The juvenile court held a probable cause hearing on October 18, 2023, at which four witnesses testified for the State.

{¶ 4} The victim testified that she had just gotten out of her car at Cumberland Park in Cleveland Heights, Ohio, when a male approached her. He was wearing all black including a black ski mask that covered his head and face. According to the victim, this male stood to her side or over her and told her to give

him her keys. The victim started screaming and the male told her "don't scream." A second male told the victim, "I have a gun." The victim did not see the second male, who was standing behind her. Other people in the vicinity heard the victim's screams and started yelling at the two males, who fled on foot.

{¶ 5} Cleveland Heights police officer Jam Panyathong responded to the scene. The victim gave a description of her assailants and told the officer that the male suspects fled south on foot. Shortly thereafter, Officer Panyathong received radio information that two male suspects were in front of a house on Superior Road. Upon arrival, the two males were on the front porch of the house. One male was wearing a jacket and the other, later identified as J.C., was wearing a SpongeBob shirt. The male wearing the jacket was later identified as J.C.'s adult brother.

{¶ 6} Officer Panyathong observed the male with the jacket, J.C.'s adult brother, enter and exit the house but did not see if J.C. ever entered the house. Officers recovered a Glock .22, loaded with one round in the chamber and an additional 14 rounds in the magazine. The firearm was located just inside the front door on the ground underneath a pillow; according to the homeowner, she did not have any firearms in the house and did not know where that gun came from. She also did not know J.C. nor his brother and had not given them permission to be on her property. The officers also seized a black ski mask, which the victim identified as the "exact same" as the mask the assailant who told her to give up her keys wore. There was no testimony regarding where the police found the black mask.

{¶ 7} At the hearing, the State admitted a copy of J.C.'s videotaped interview with Detective Jemond Riffe into evidence. At first J.C. denied involvement, but after repeated questioning, he admitted he and his brother attempted to carjack a car with "a kayak on top." He told the detective that he walked up to the car and told the victim "to give me the keys." Although J.C. maintained that it was him who demanded the victim's keys, he also admitted that he was the assailant who stood behind the victim and was wearing a white medical mask, not a black ski mask. J.C. eventually admitted that his brother wore a black ski mask.

{¶ 8} J.C. told the detective neither he nor his brother had a gun, but eventually admitted he was carrying a firearm during the incident, which he maintained he kept in the front of his pants. J.C. admitted that the firearm was loaded, described the firearm, and said he bought it off the streets for $1,000.

{¶ 9} The parties stipulated to the fact that the firearm was operable.

{¶ 10} On November 30, 2023, the juvenile court issued its probable cause decision. The court found probable cause as to Count 2 (aggravated burglary), Counts 3–5 (robbery), Count 6 (tampering with evidence), Count 7 (carrying a concealed weapon), and Count 8 (attempted grand theft). The court further found probable cause for the one-year firearm specifications attached to Counts 2–6 and 8 but that there was insufficient evidence to show reasonable cause to believe that J.C. did use or display the firearm, brandish the firearm, or indicate that he possessed a firearm as alleged in Count 1.

{¶ 11}The trial court's decision did not explicitly state whether the court granted or denied the State's mandatory-transfer motion, nor did the decision mention Count 9 (aggravated menacing).

{¶ 12} The State appealed, arguing that the trial court erred in denying the State's motion for a mandatory bindover. *In re J.C.*, 2024-Ohio-1883 (8th Dist.). J.C. argued that there was no final appealable order or, in the alternative, that the trial court's order should be affirmed.

{¶ 13} This court found that the trial court's order was not a final, appealable order because the trial court adjudicated fewer than all the delinquency counts after the probable-cause hearing and ordered an amenability investigation without explicitly denying the State's motion for transfer. *Id.* at ¶ 19.

{¶ 14} On May 30, 2024, the juvenile court issued an order explicitly denying the State's motion to transfer on Counts 1 – 8. The court further stated that Count 9, a misdemeanor of the first degree, was not subject to transfer because it was not a felony offense if committed by an adult.

{¶ 15} The State filed a notice of appeal and raises the following assignment of error:

> The trial court erred in denying the State's motion for mandatory transfer and erred in determining that there did not exist probable cause to believe that J.C. had a firearm on his person and that J.C. indicated possession of the firearm when attempting to rob the victim.

## II.  Law and Analysis

{¶ 16} When the State requests a mandatory bindover, the juvenile court determines whether the child is eligible for mandatory bindover "'according to the child's age, the nature of the act, and other circumstances and whether probable cause exists to believe that the juvenile committed the act charged.'" *In re C.G.*, 2012-Ohio-5286, ¶ 29 (8th Dist.), quoting *In re M.P.*, 2010-Ohio-599, ¶ 11; R.C. 2152.10(A); R.C. 2152.12(A)(1); Juv.R. 30(A)-(B).

{¶ 17} R.C. 2152.12(A)(1)(b)(ii) states, in relevant part:

> After a complaint has been filed alleging that a child is a delinquent child by reason of committing a category two offense, the juvenile court at a hearing shall transfer the case if the child was sixteen or seventeen years of age at the time of the act charged and . . . [d]ivision (A)(2)(b) of section 2152.10 of the Revised Code requires the mandatory transfer of the case, and there is probable cause to believe that the child committed the act charged.

{¶ 18} Pursuant to R.C. 2152.10(A)(2)(b), "[a] child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in [R.C. 2152.12]" where

> [t]he child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and [. . .] [t]he child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

{¶ 19} It is undisputed that J.C. was charged with a category-two offense, that being aggravated robbery with one- and three-year firearm specifications.

{¶ 20} If a child is eligible for mandatory bindover and probable cause exists to believe that the juvenile committed the act charged, the juvenile court must enter

an order of transfer. *In re C.G.*, 2012-Ohio-5286, at *id.*, citing *In re M.P.*, 2010-Ohio-599; Juv.R. 30(B) ("In any proceeding in which transfer of a case for criminal prosecution is required by statute upon a finding of probable cause, the order of transfer shall be entered upon a finding of probable cause.").

{¶ 21} A reviewing court should "review the juvenile court's findings of fact for abuse of discretion and review its conclusions of law de novo." *In re A.J.S.*, 2008-Ohio-5307, ¶ 1. "We defer to the juvenile court's determinations regarding witness credibility, reviewing those determinations for abuse of discretion." *State v. Shirilla*, 2024-Ohio-4674, ¶ 151 (8th Dist.). In reviewing the trial court's factual findings for an abuse of discretion we consider whether the court exercised "its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. However, "whether the state has produced sufficient evidence to support a finding of probable cause in a mandatory-bindover proceeding is a question of law, and [is reviewed] de novo." *In re A.J.S.* at ¶ 47, citing *State v. Consilio*, 2007-Ohio-4163.

{¶ 22} "The probable cause standard for mandatory bindover requires the state to provide credible evidence of every element of an offense." *In re C.G.*, at ¶ 31, citing *State v. Iacona*, 93 Ohio St.3d 83, 93 (2001). "Probable cause in this context is not guilt beyond a reasonable doubt; it is evidence that raises more than a suspicion of guilt." *In re C.G.* at *id.*, citing *A.J.S.*, 2008-Ohio-5307. "Probable cause is 'a fair probability, not a prima facie showing, of criminal activity.'" *In re J.R.*, 2021-Ohio-2272, ¶ 32 (8th Dist.), quoting *State v. Martin*, 2021-Ohio-1096, ¶ 32

(8th Dist.). "It does not require that a belief be correct or that it be more likely true than false." *In re J.R.* at *id.* While a trial court must determine whether the State has presented credible evidence to support each element, it must not "exceed the limited scope of the bindover hearing or to assume the role of the ultimate fact-finder." *In re J.R.* at ¶ 33, citing *In re A.J.S.* at ¶ 44; *see also Shirilla*, 2024-Ohio-4674, at ¶ 150.

{¶ 23} Here, the trial court found that the evidence showed that

> an accomplice was present and the alleged victim testified that it was the alleged accomplice who said, "I have a gun." The alleged victim did testify that she did not see a firearm in the alleged delinquent's possession. There is probable cause to believe that the alleged delinquent committed the act as an accomplice who did not possess, use or indicate that he possessed a firearm. An act of complicity is not subject to mandatory transfer. There was insufficient evidence to show that the alleged delinquent possessed the firearm, and in the absence of actual possession, Count 1 is not subject to mandatory transfer.

{¶ 24} Thus, the trial court concluded that while there was probable cause to believe that J.C. committed aggravated robbery as an accomplice, there was not probable cause to believe that he committed the act as the principal offender.

{¶ 25} Under the principle of complicity or accomplice liability, an individual may be found guilty if he or she solicits, aids, abets, or conspires with another individual to commit an offense and shares the criminal intent of an individual who commits the principal offense. *In re C.J.H.*, 2024-Ohio-1233, ¶ 15 (12th Dist.), citing *State v. Buell*, 2022-Ohio-3102, ¶ 17. There is no distinction between a defendant convicted of complicity or convicted as a principal

offender. *Buell* at *id.* Pursuant to R.C. 2923.03(F), "[a] charge of complicity may be stated in terms of [that] section, or in terms of the principal offense."

{¶ 26} In *State v. Hanning*, 89 Ohio St.3d 86, 94 (2000), the Ohio Supreme Court decided that the complicity statute, R.C. 2923.03, does not apply to the juvenile bindover criteria as set forth under former section R.C. 2151.26 (currently R.C. 2152.10 and 2152.12). In *Hanning*, the Court held that the concept of complicity could not be used to support mandatory bindover of the accused, an accomplice juvenile, based on the principal offender's use of a firearm in a category-two offense.[1] *Id.*

{¶ 27} At this stage of the proceedings, the State was not required to prove the truth of the allegations against J.C.; the State was only required to present credible evidence showing probable cause supporting each element of the offenses charged. The juvenile court found insufficient evidence that J.C. possessed a firearm and displayed, brandished, indicated that he possessed a firearm or used the firearm to facilitate the offense. The State disagrees, arguing that it presented sufficient evidence that J.C. had a firearm while he committed the charged act and indicated his possession of the firearm. We find the State's position persuasive.

{¶ 28} At the probable cause hearing, the victim testified that one male appeared in her face and said, "[G]ive me your keys" and "don't scream." The male was wearing black clothes including a black ski mask that covered his entire head

---

[1] The Ohio Supreme Court later clarified that *Hanning* does not apply to all mandatory bindover proceedings, but rather only those based upon a firearm specification, as in this case. *See Agee v. Russell*, 92 Ohio St.3d 540 (2001).

leaving only his eyes exposed. The victim testified that a second male, who she never saw, approached her from behind and said, "I have a gun." The victim never saw a firearm and was unable to identify either assailant.

{¶ 29} During his interrogation, J.C. told Detective Riffe that he approached the side of the victim's car and told her to give him the keys. Later in the interview, J.C. nodded "yes" when the detective asked if it was his brother who was in front talking to the victim, indicating that he (J.C.) was the assailant that stood behind the victim. He also denied wearing a black mask, telling the detective that his brother wore a black ski mask and he wore a white medical mask. He admitted to carrying a firearm, which he bought off the streets for $1,000.

{¶ 30} We disagree with the trial court's finding that there was insufficient evidence that J.C. possessed a firearm during the incident and indicated he possessed it. J.C. admitted to Detective Riffe that he had a firearm during the incident and kept it in the front of his pants; thus, J.C. admitted possession. In addition, even though J.C. denied telling the victim he had a gun, the evidence presented raises more than a suspicion of guilt that J.C., who carried the gun, was also the person who said, "I have a gun."

{¶ 31} The defense's theory was that J.C. wanted to "take the fall" for his adult brother. Whatever the reason for J.C.'s confession, we find that, at this stage, there was credible evidence that J.C. was both in possession of the firearm and indicated possession of the firearm.

**{¶ 32}** Therefore, we conclude from the testimony provided there is credible evidence that J.C. committed an act, that if it had been committed by an adult would be aggravated robbery with one- and three-year gun specifications. The trial court erred in finding that J.C. was not subject to mandatory bindover.

**{¶ 33}** The sole assignment of error is sustained.

**{¶ 34}** Judgment reversed. Case remanded for the trial court to enter a finding of probable cause and, pursuant to R.C. 2152.12, order J.C. transferred to the General Division of the Cuyahoga County Common Pleas Court.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)